QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Rajat Rana (pro hac vice)
295 5th Ave, 9th Floor
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
rajatrana@quinnemanuel.com

Stephen Q. Wood (pro hac vice)
Sterling M. Paulson (pro hac vice)
2755 E Cottonwood Pkwy, Suite 520
Salt Lake City, UT 84121
Telephone: (801) 515-7300
Facsimile: (801) 515-7400
stephenwood@quinnemanuel.com
sterlingpaulson@quinnemanuel.com

DEFAZIO LAW OFFICE, LLC
Sarah Tollison (WSB# 6-4371)
172 Center St, Suite 203
P.O. Box 4877
Jackson, WY 83001
Telephone: (307) 733-5965
Facsimile: (307) 733-3786
sarah@defaziolaw.com

*Attorneys for Plaintiff SJH 11 LLC*

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| SJH 11 LLC,<br><br>Plaintiff,<br><br>v.<br><br>DOWBUILT, INC., TIMOTHY GLICK, and DOES 1–10,<br><br>Defendants. | Case No. 1:25-cv-00018-SWS<br><br>**PLAINTIFF'S AMENDED COMPLAINT**<br><br>**JURY DEMANDED** |

Plaintiff SJH 11 LLC hereby complains against Defendants Dowbuilt, Inc., Timothy Glick, and Does 1–10 and alleges as follows:

## INTRODUCTION

1. This case centers on an ongoing scheme by the Defendants to defraud SJH and other homeowners by billing them for work never completed and materials never used on their construction projects.

2. For years, Defendants have operated various shell companies, which they claim are independent subcontractors bidding on their residential construction contracts. In truth, the bidding process is a sham. The shell entities' "subcontractors" are either controlled by or closely affiliated with the Defendants and are used to fabricate billing invoices to fraudulently bill customers for work that was not performed and generate additional costs and fees.

3. Through this multi-year, multi-state scheme to defraud, Defendants have caused SJH and other victims to overpay millions of dollars on their construction contracts.

## PARTIES

4. Plaintiff SJH is a Delaware limited liability company with its principal place of business in Jackson, Wyoming. It was formed in 2021 to finance, develop, and manage certain real property in Jackson, Wyoming.

5. Defendant Dowbuilt is a Washington corporation with its principal place of business in Seattle, Washington.

6. Defendant Timothy Glick is a citizen of Wyoming.

7. Defendants Does 1–10 are individuals and entities who participated in the scheme to defraud and profited from doing so. Upon information and belief, the Does may include Dowbuilt employees, executives, finance and administrative personnel, project managers, engineers, consultants, affiliates, subcontractors, or employees of subcontractors. Upon information and belief, Does are residents of California, Idaho, Montana, Utah, and Washington. The Does will be determined during discovery, and relevant claims will be amended to include their names.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because the claims under the Racketeer Influence and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO Act"), arise under the laws of the United States.

9. Under 28 U.S.C. § 1367, the Court has supplemental jurisdiction over SJH's third through sixth claims for relief because they arise out of the same common set of facts that satisfy SJH's federal claims for relief.

10. This Court has personal jurisdiction over Defendants on several grounds:

a. First, over Glick because he is a Wyoming citizen.

b. Second, over Dowbuilt and Does under the Due Process Clause and Wyo. Stat. § 5-1-107 because they (a) transact business and/or are admitted to do business within Wyoming, (b) contract or contracted to provide services or goods in Wyoming, (c) cause or caused injury within Wyoming to Wyoming citizens, including SJH, (d) commit or committed violations of the statutes and the common law at issue in this lawsuit which occurred, in whole or in part, within Wyoming, (e) place or placed their products and services into the stream of commerce throughout the United States and take actions purposefully directed toward Wyoming, and (f) maintain or maintained substantial contacts in the State of Wyoming. Dowbuilt's and Does' substantial activities in this District establish minimum contacts with this forum such that the exercise of jurisdiction over Dowbuilt and Does would not offend traditional notions of fair play and substantial justice.

c. Third, over all Defendants because all have violated and/or conspired amongst themselves to violate the RICO Act throughout the United States and Wyoming. Defendants' RICO fraud scheme has been directed at and has had the foreseeable and intended effect of, causing injury to persons residing in, located in, or doing business in Wyoming, including SJH. Accordingly, to the extent the Court finds a Defendant does not have minimum contacts with Wyoming, this Court also has personal jurisdiction over all Defendants through valid nationwide services of process under 18 U.S.C. § 1965(b) because the ends of justice so require. The Court also has personal jurisdiction over Defendants through the conspiracy theory of jurisdiction because Defendants participated in a conspiracy in which at least one conspirator committed overt acts in this state in furtherance of the challenged conduct.

11. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the causes of action at issue occurred in this District. Venue is also proper in this District under 18 U.S.C. 1965(a).

## FACTUAL ALLEGATIONS

12. Since at least as early as 2021, Defendants have managed and directed an enterprise consisting of shell entities, individuals, and businesses who worked as subcontractors on various high-end home construction sites. Defendants use their enterprise of shell entities and subcontractors to defraud homeowners.

13. Defendants' scheme to defraud follows a similar pattern. First, Defendants secure lucrative construction contracts by failing to disclose their ownership in the shell entities and their control over their network of subcontractors. Second, Defendants' subcontractors generate false

billing records for work that was not performed and materials that were not used on the project. Third, Defendants consolidate these false billing records into fraudulent invoices to their customers, adding additional fabricated costs for work, materials, and fees. Lastly, Defendants demand payment on their knowingly fraudulent invoices, threatening to walk off the job if they are not paid. Defendants ran this playbook on SJH.

### *i. Defendant Glick Secured The Lucrative Opportunity To Work On The Projects In August And September 2021*

14. SJH acquired two adjacent properties in Jackson, Wyoming ("Projects") to build a main house ("Lot 11") and a guesthouse ("Lot 10").

15. In August and September 2021, SJH hired SDI, an Idaho limited liability company, to work on the Projects. In securing the work, Defendant Glick represented himself as SDI's "Principal" and identified SDI as the "Contractor." Glick further represented that SDI was doing business as "Dowbuilt."[1] However, throughout the Projects and unbeknownst to SJH, Glick was, in fact, an employee of Defendant Dowbuilt, a completely separate entity from SDI.

[1] Throughout SJH's interactions with Defendants, they have repeatedly blurred the lines between SDI and Defendant Dowbuilt in order to obfuscate Dowbuilt's participation in the scheme to defraud. There is no evidence of any legal connection between Dowbuilt and SDI.

### *ii. Defendants Used a Shell Company Called "Dynamic" To Generate Fraudulent Billing Under A Sham Subcontract*

16. After securing the Projects, and without disclosing to SJH the conflict of interest, Glick hired his own shell company, Dynamic Development LLC, as a purported "subcontractor." Per his LinkedIn page, Glick served as the Owner, CEO, and COO of Dynamic from July 2016 through February 2021,[2] and credited himself with building the "successful company specializing in resort real estate development in high-cost Rocky Mountain region resort market."

17. Dynamic, however, was a subcontractor in name only. In response to an audit inquiry, Glick admitted that Dynamic never submitted a bid or proposal for the Projects: "[n]o subcontracts or agreements were executed to [his] knowledge;" and no documents "exist that reference Dynamic Development being onsite or performing work on the [P]roject[s]."

1. Please provide all bids/or proposals that were submitted to SDI/Dowbuilt for this project.

   Response: No bids or proposals were submitted to SDI/Dowbuilt

2. Please provide all executed subcontracts or other agreements between SDI/Dowbuilt and Dynamic Development.

   Response: No subcontracts or agreements were executed to my knowledge between SDI/Dowbuilt and Dynamic Development.

8. Please provide all documents that exist that references Dynamic Development being onsite or performing work on the project.

   Response: From Dynamic Developments perspective, there are no such documents.

18. Even so, Dynamic produced invoices for work purportedly done on the projects that were inflated and/or fraudulent.

---

[2] Dynamic Development LLC has filed as a Wyoming limited liability company twice with Glick as its registered agent: Filing ID 2016-000719553 was initiated on July 8, 2016, and administratively dissolved on September 8, 2017; Filing ID 2020-000902778 was initiated on February 27, 2020, and was again administratively dissolved on April 11, 2022.

19. For example, a portion of the purported work was performed by Emilio Tzompa (doing business as "E.T. Construction") and his purported associates.[3] The Tzompa billing records provide an illustrative example of Defendants' fraudulent billing.

20. Over the course of the Projects, Emilio Tzompa prepared and submitted via email/text message hand-written E.T. Construction sales orders to Dowbuilt employees, including Tod Murdock, Jeff Heger, and Tyson Abel. These orders detailed the hours Emilio and his son, Luis Tzompa, allegedly worked on Lots 10 and 11. As shown in the below examples for January 2022, E.T. Construction billed:

a. $6,690 for work on Lot 10 (denoted as "#10"), including $3,960 for Emilio Tzompa (66 hours at $60/hour) and $3,000 for Luis Tzompa (75 hours at $40/hour); and

b. $3,000 for work on Lot 11 (denoted as "#11"), including $1,800 for Emilio Tzompa (30 hours at $60/hour) and $1,200 for Luis Tzompa (30 hours at $40/hour).


CUSTOMER'S ORDER NO. DEPARTMENT DATE 1-28-22
NAME E T Construction
ADDRESS PO Box 1168
CITY, STATE, ZIP DRIGGS ID 83422
SOLD BY CASH C.O.D. CHARGE ON ACCT. MDSE. RETD. PAID OUT

| QUANTITY | DESCRIPTION | Hours | PRICE | AMOUNT |
|---|---|---|---|---|
| | | 66 | $60 | $3960.00 |
| | #10 | 75 | $40 | $3000.00 |
| | | | total | $6960.00 |

RECEIVED BY


CUSTOMER'S ORDER NO. DEPARTMENT DATE 1-28-22
NAME E T Construction
ADDRESS PO Box 1168
CITY, STATE, ZIP DRIGGS ID 83422
SOLD BY CASH C.O.D. CHARGE ON ACCT. MDSE. RETD. PAID OUT

| QUANTITY | DESCRIPTION | Hours | PRICE | AMOUNT |
|---|---|---|---|---|
| | | 30 | $60 | $1800.00 |
| | #11 | 30 | $40 | $1200.00 |
| | | | total | $3.000.00 |

RECEIVED BY
KEEP THIS SLIP FOR REFERENCE

[3] E.T. Construction registered as a limited liability company in Idaho in 2024 with Emilio Tzompa as its registered agent and Luis Angel Tzompa as its only listed governor. Before that, on March 31, 2008, Emilio Tzompa filed a certificate of assumed business name in Idaho for E.T. Construction.

21. Glick then falsified these billing records to create fraudulent Dynamic invoices. For example, the Dynamic invoices prepared for January 2022 show the same number of hours work for Emilio and Luis, but Glick increased their respective hourly rates by $5. In addition, Glick attributed 105 hours purportedly worked on the projects by Jorge Ordonez at $40 per hour for a total of $4,200. But Dynamic provided no substantiation for Ordonez ever being on the job sites.

**Invoice**

**Dynamic Development LLC**
Box 4088
Jackson, WY 83001
(307) 413 4476
Email: tglick@dchjh.com

**Invoice #:** #1
**Ref:** MDR Lot 10
**Date:** 2/28/2022

| To: | Dowbuilt | Billing Period | 1/11/2022 - 2/28/2022 |
|---|---|---|---|

| Description | Units | Cost per unit | Amount Invoiced |
|---|---|---|---|
| Emilio Tzompa | 66 | $ 65.00 | $4,290.00 |
| Luis Tzompa | 75 | $ 45.00 | $3,375.00 |
| Jorge Ordonez | 75 | $ 40.00 | $3,000.00 |

**Invoice**

**Dynamic Development LLC**
Box 4088
Jackson, WY 83001
(307) 413 4476
Email: tglick@dchjh.com

**Invoice #:** #2
**Ref:** MDR Lot 11
**Date:** 2/28/2022

| To: | Dowbuilt | Billing Period | 1/11/2022 - 2/28/2022 |
|---|---|---|---|

| Description | Units | Cost per unit | Amount Invoiced |
|---|---|---|---|
| Emilio Tzompa | 30 | $ 65.00 | $1,950.00 |
| Luis Tzompa | 30 | $ 45.00 | $1,350.00 |
| Jorge Ordonez | 30 | $ 40.00 | $1,200.00 |

22. Dowbuilt then approved and used the inflated Dynamic invoices to prepare monthly billings for SJH. These billings identified Dynamic as the "subcontractor" omitting any mention of E.T. Construction and the underlying sales orders. Following this, Defendants approved for

payment, certified in a sworn statement, and sent the falsified invoices to SJH for its approval and payment, never disclosing Glick's ownership of Dynamic Development.

| Subcontractors | | | | | | |
|---|---|---|---|---|---|---|
| Absolute Foam Insulation | 07-1000 | Dmpprfng and Watrprf | 03-28-2022 | 680 | | 7,500.56 |
| Dynamic Development LLC | 06-1000 | Rough Carpentry | 02-28-2022 | 1 | | 10,665.00 |
| FC Excavation LLC | 31-0010 | Earthwork | 03-23-2022 | 1249 | | 44,834.82 |
| FC Excavation LLC | 02-5800 | Snw Cntrl, Tn, & Htn | 03-23-2022 | 1250 | | 21,938.04 |
| Timothy Glick | 04-0100 | CMU Wall | 03-03-2022 | REIMB-006691 | | 52.98 |
| Tonks Masonry Inc | 04-0100 | CMU Wall | 03-25-2022 | 01 | | 28,800.00 |
| Wyoming Mechanical Company | 22-1100 | Plumbing Rough-In | 03-02-2022 | 818303 | | 1,405.00 |
| | | | | Subcontractors Total | .00 | 115,196.40 |

| Subcontractors | | | | | | |
|---|---|---|---|---|---|---|
| Dowbuilt Concrete | 03-3000 | Cast-in-Place Concrt | 03-20-2022 | 101844709 | | 57,854.47 |
| Dynamic Development LLC | 06-1000 | Rough Carpentry | 02-28-2022 | 2 | | 4,500.00 |
| Elite Steel Erectors LLC | 05-1200 | Structural Stl Frmng | 03-24-2022 | 1274 | | 14,640.00 |
| Spearhead Timberworks Inc. | 05-1200 | Structural Stl Frmng | 03-25-2022 | 3465 | | 113,474.00 |
| Spearhead Timberworks Inc. | 05-1200 | Structural Stl Frmng | 03-25-2022 | 3465 | | 6,808.44 |
| | | | | Subcontractors Total | .00 | 197,276.91 |

23. Defendants also used the inflated Dynamic invoice amounts to calculate the applicable invoice subtotal. This enabled them to charge SJH ***inflated direct fees*** (in this example, an additional $5,205) and to collect ***inflated indirect fees*** in the form of a 12% "Contractor's fee" and 1.5% "insurance" fee, both of which were applied against the stated subtotal.

| | | |
|---|---|---|
| Subcontractors | | 115,196.40 |
| | *Subtotal* | 263,706.24 |
| Contractor's Fee - 12% | | 31,644.75 |
| Insurance - 1.5% | | 4,497.60 |

| | | |
|---|---|---|
| Subcontractors | | 197,276.91 |
| | *Subtotal* | 253,084.28 |
| Contractor's Fee - 10.75% | | 27,206.56 |
| Insurance - 1.5% | | 4,268.27 |
| | *Subtotal* | 284,559.11 |

24. Thereafter, Defendants emailed the monthly billings, which included the inflated invoices, to request payment from SJH. The Dynamic invoices for the January 2022 billing period, referenced above, were included in the March monthly billing packages emailed, on April 11, 2022

(Lot 10) and April 15, 2022 (Lot 11). The remainder of the inflated Dynamic invoices were included in monthly billings Defendants emailed on May 10, 2022, July 8, 2022, and July 13, 2022.

25. Glick next prepared two pay applications for the work Dynamic supposedly did on the Projects. Glick, as Dynamic's owner, submitted these applications to himself in his role as the purported principal of the "Contractor," while actually being an employee of separate entity Dowbuilt. On July 18 and 21, 2022, Glick then approved and certified, under penalty of perjury, that each Dynamic pay application was a true and correct statement.


I CERTIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF WYOMING THAT THE ABOVE IS A TRUE AND CORRECT STATEMENT.

NAME: Tim Glick
TITLE: Principal
SIGNED: Tim Glick
DATED THIS 7/18/2022
AT (City, State)

FOR OFFICE USE ONLY
JOB NUMBER
JOB NAME
REF NUMBER
COST CODE
APPROVED


I CERTIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF WYOMING THAT THE ABOVE IS A TRUE AND CORRECT STATEMENT.

NAME: Tim Glick
TITLE: Principal
SIGNED: Tim Glick
DATED THIS 7-21-22 Jackson, WY
AT 83001 (City, State)

FOR OFFICE USE ONLY
JOB NUMBER
JOB NAME
REF NUMBER
COST CODE
APPROVED

26. In this manner, Defendants approved and submitted ***all*** of Dynamic's invoices, which covered billing periods between January 1 and May 31, 2022. These invoices repeatedly fabricated billing entries for hourly work preformed by individuals who are not reflected on E.T. Construction's original billing records.

27. For example, for the billing periods between February 1 and May 31, 2022, Dynamic's invoices listed 569 hours allegedly worked by "Jade" Tzompa, billed at an hourly rate of $60—totaling $34,140. Jade Tzompa's purported work does not appear in the handwritten sale orders submitted by E.T. Construction, nor was Jade paid by E.T. Construction or Dynamic.

28. When pressed by SJH in an audit request, Dynamic did not provide any documents substantiating that a person by the name of Jade Tzompa worked on the Projects. Additionally, in an ongoing suit between SJH and E.T. Construction, after being compelled by the court, E.T. Construction stated that "it was not in possession of any responsive documentation" nor was "it in a position to obtain such information from a third party." Moreover, E.T. Construction stated that "Jade Tzompa is not Emilio Tzompa's son nor member of his household. Furthermore, Jade Tzompa is not a current employee of E.T. Construction, nor was he an employee of E.T. Construction in 2001–2022."

> **REQUEST FOR PRODUCTION NO. 33:** Please produce a copy of any and all IRS Forms W-2 or 1099 issued by the Defendant to Jade Tzompa for the years 2022, 2023, and 2024. If 2024 Forms W-2 or 1099 are not available, please provide the estimated amount of wages or 1099 income expected to be reported on the IRS Forms for 2024.
>
> **RESPONSE:** No responsive information exists.
>
> ***SUPPLEMENTAL RESPONSE:*** Defendant is not in possession of any responsive documentation nor is in a position to obtain such information from a third party. Jade Tzompa is not Emilio Tzompa's son nor member of his household. Furthermore, Jade Tzompa is not a current employee of ET Construction, nor was he an employee of ET Construction in 2001 – 2022.

29. SJH could not locate a Jade Tzompa in any U.S. database (18 years or older). Simply put, the 569 hours Dynamic billed for "Jade" were fraudulent because "Jade" was not present at the sites, was not paid for any work, and likely does not exist.

30. In addition to manufacturing the work allegedly performed by "Jade," Defendants also fabricated and certified hourly time entries for Emilio and Luis Tzompa for specific days, including but not limited to:

a. Dynamic's Lot 11 hour log, prepared by Glick, claims that, on March 11, 2022, Emilio Tzompa and Luis Tzompa each billed eight and a half hours for floor framing. Security camera footage from that day, however, does not show any vehicles or workers there that day. A -8648 debit card transaction completed at 1:59 PM by Emilio Tzompa at a gas station called Basin Travel Stop in Driggs,

Idaho—more than 39.3 miles away (or roughly two hours roundtrip)—also makes the time billed by Emilio implausible.

b. Dynamic's Lot 11 hour log, prepared by Glick, claims that, on March 16, 2022, Emilio and Luis each billed eight hours on ridge beam installation. Security camera footage from that day, however, shows that Emilio and Luis were not present at the site. Indeed, the ridge beam installation could not have occurred because there was no superstructure in place by that date.

c. Dynamic's Lot 11 hour log, prepared by Glick, claims that, on March 17, 2022, Emilio and Luis each billed eight hours for ridge beam installation. Security camera footage from that day, however, shows that Emilio and Luis were not there.

d. Dynamic's Lot 11 hour log, prepared by Glick, claims that, on March 18, 2022, Emilio and Luis Tzompa each billed eight hours for portal frame adjustment and SPHD package staging. But security footage shows that Emilio and Luis were not present on Lot 11 that day.

e. Dynamic's Lot 11 hour log, prepared by Glick, claims that, on March 21, 2022, Emilio and Luis each worked ten hours on eave beam and purlin installation. But security footage shows that Emilio and Luis were not present on Lot 11 that day.

f. Dynamic's Lot 11 hour log, prepared by Glick, claims that, on March 22, 2022, Emilio and Luis each worked ten hours on eave beam and purlin installation. But security footage shows that Emilio and Luis were not present on Lot 11 that day.

g. Dynamic's Lot 11 hour log, prepared by Glick, claims that, on March 23, 2022, Emilio and Luis each worked ten hours on purlin installation and roof panel installation. But security footage shows that Emilio and Luis were not present on Lot 11 that day.

h. Dynamic's Lot 11 hour log, prepared by Glick, claims that, on March 24, 2022, Emilio and Luis each worked ten hours on roof panel installation. But security footage shows that Emilio and Luis were not present on Lot 11 that day.

i. Dynamic's Lot 11 hour log, prepared by Glick, claims that, on each of March 28, March 29, and March 30, 2022, Emilio and Luis each billed ten hours on roof panel installation. Security camera footage for each of those days only shows that the Tzompas were present on-site for eight of the claimed ten hours.

j. Dynamic's Lot 11 hour log, prepared by Glick, claims that, on March 31, 2022, Emilio and Luis each billed nine hours on roof sheathing and SDS screw install at rafters/ridge. But security footage shows that Emilio and Luis were not present on Lot 11 that day.

31. Defendants also directed Tzompa to work only a few hours or take entire days off while still billing a full workday.

32. For example, on October 5, 2022, Dowbuilt employee Jeff Heger texted Emilio and instructed him to work only a "few hours" the next day (October 6) on the Projects but reassured him he could "log a full day."

**CHAT - E001_0000001 - 00057 - 2022/10/06**

J — Jef <7742178012> — 10/5/2022, 19:22
I need you guys to come in tomorrow to lot 10 for a few hours. You can log a full day.
Can you guys meet me there at 9am?

U — Unknown — 10/5/2022, 19:32
OK 👍🏿

J — Jef <7742178012> — 10/5/2022, 19:32
Gracias

J — Jef <7742178012> — 10/6/2022, 9:28
Meet me at Aster lane this morning. I am waiting for Tim to coordinate a trailer for lot 10 with fish creek.

U — Unknown — 10/6/2022, 9:39
👍

33. As instructed, Emilio billed a full 10-hour day on October 6, which Defendants approved and submitted to SJH for payment.



CUSTOMER'S ORDER NO. | DEPARTMENT | DATE 10/6/22
NAME ET Construction
ADDRESS PO BOX 1168
CITY, STATE, ZIP Driggs ID 83422
SOLD BY | CASH | C.O.D. | CHARGE | ON. ACCT. | MDSE. RETD. | PAID OUT

| | QUANTITY | DESCRIPTION | HOURS | PRICE | AMOUNT |
|---|---|---|---|---|---|
| #11 | mon-26 | Fascia welding | 10 | $ 70.00 | |
| #10 | Tues-27 | Roof | 10 | | |
| #10 | Wed-28 | Roof | 10 | | |
| #11 | Thurs-29 | Fire place | 10 | | |
| 5 | mon-3 | N/a | 10 | | |
| 6 | Tues-4 | N/a | 10 | | |
| 7 | wed-5 | N/a moving | 10 | | |
| 8 | Thurs-6 | N/a moving | 10 | | |
| 17 | | | 80 | $70.00 | $5600.00 |

ET Construction - October/Final Bill
MDR Lot 11 - 30hrs @ $70hr = $2,100
MDR Lot 10 - 50hrs @ $70/hr = $3,500
80hrs@$70/hr = $5,600 Total

RECEIVED BY

34. Likewise, two days prior, Dowbuilt employee Tod Murdock instructed Tzompa to "take off" October 4. Emilio appears to have confirmed taking off October 4 by responding with a "thumbs up" emoji.

**Messages in chronological order** (times are shown in GMT -05:00)

**IM - E001_0000001 - 2022/10/04 - b1a2b88eba7151d0d34547f632f3910e99827a54ffd40ab69577e00de79e20b7**

| | | |
|---|---|---|
| T | Tod <+13074134475><br>Take tomorrow off too. I'm trying to get some answ | 10/3/2022, 8:54 PM |
| ET | Emilio Tzompa <307-690-9402><br>👍 | 10/3/2022, 9:14 PM |

35. Despite agreeing to take the day off, Tzompa's submitted invoice billed a full 10-hour day for "N/A" on October 4, which Defendants approved and submitted to SJH.

| CUSTOMER'S ORDER NO. | DEPARTMENT | DATE 10/6/22 |
|---|---|---|
| NAME ET Construction | | |
| ADDRESS PO BOX 1168 | | |
| CITY, STATE, ZIP Driggs ID 83422 | | |

| SOLD BY | CASH | C.O.D. | CHARGE | ON ACCT. | MDSE. RETD. | PAID OUT |
|---|---|---|---|---|---|---|
| | | | | | | |

| QUANTITY | DESCRIPTION | Hours | PRICE | AMOUNT |
|---|---|---|---|---|
| #10 mon-26 | Fascia welding | 10 | $ 70.00 | |
| #10 Tues-27 | Roof | 10 | | |
| #10 Wed-28 | Roof | 10 | | |
| #11 Thurs-29 | Fireplace | 10 | | |
| 5 mon-3 | N/a | 10 | | |
| 6 Tues-4 | N/a | 10 | | |
| 7 Wed-5 | N/a moving | 10 | | |
| 8 Thurs-6 | N/a moving | 10 | | |
| 9 | ET Construction - October/Final Bill | | | |
| 10 | MDR Lot 11 - 30hrs @ $70hr = $2,100 | | | |
| 11 | MDR Lot 10 - 50hrs @ $70/hr = $3,500<br>80hrs@$70/hr = $5,600 Total | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | 80 | $70.00 | $5,600.00 |
| 18 | | | | |

36. This pattern of fraudulent billing invoices was repeated with other subcontractors purportedly providing work on the Projects.

### iii. *Defendants Used "Dowbuilt Concrete" To Generate Fraudulent Invoices and Double-Bill*

37. Beginning in November 2021, Defendants began billing for work purportedly done by an alleged subcontractor, "Dowbuilt Concrete."

38. On information and belief, "Dowbuilt Concrete" does not exist as a legal entity. Instead, Dowbuilt Concrete was used as a billing alias of Dowbuilt to fabricate billing invoices for work that was not completed.

39. For example, on September 22, 2022, Dowbuilt, through Dowbuilt Concrete, submitted a pay application to SJH seeking $224,491.91 for Lot 11 concrete work allegedly completed through August 2022. The pay application fraudulently reported that the total percentage of work complete was at 76.84%. Mark Atkinson, Dowbuilt Concrete's purported manager (who was in reality a senior Dowbuilt executive) certified, under the penalty of perjury, that the statements in the application were true and correct.

FROM
Dowbuilt Concrete

AFP # 8 DATE 9/22/2022
PROJECT NAME Lot 11
PROJECT NUMBER 369
PROJECT ADDRESS 1165 W Bar BC Ranch Road
Jackson, WY 83001

FOR WORK COMPLETED THROUGH 8/31/2022

| | | | |
|---|---|---|---|
| ORIGINAL CONTRACT AMOUNT | | $ | 937,844.66 |
| MODIFICATIONS | No. One | $ | 661,033.34 |
| | No. Two | $ | |
| | No. Three | $ | |
| | No. Four | $ | |
| | No. Five | $ | |
| MODIFIED CONTRACT AMOUNT | | $ | 1598,878.00 |
| TOTAL % OF WORK COMPLETE | | | 76.84 % |
| AMOUNT OF CONTRACT COMPLETE | | $ | 1,228,604.84 |
| LESS PREVIOUS GROSS BILLING | | $ | 1,004,112.93 |
| GROSS AMOUNT OF THIS BILLING | | $ | 224,491.91 |
| LESS RETENTION | | $ | |
| NET AMOUNT OF THIS BILLING | | $ | 224,491.91 |

☐ Yes, please pay by the 10 and take discount. *IMPORTANT: Invoices are paid by the 10 only if Subcontractor offers a 2% discount. Please "X" the box above if you want to be paid by the 10

We hereby agree with the above terms and conditions upon which will be the basis of Dowbuilt's payment of this SUBCONTRACT APPLICATION FOR PAYMENT. I CERTIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF TI OF WYOMING THAT THE ABOVE IS A TRUE AND CORRECT STATEMENT.

NAME Mark Atkinson
TITLE Manager
SIGNED DocuSigned by: Mark Atkinson 9/23/2022
Dated this DAY OF , 20
AT Mark Atkinson
(City, State)

FOR OFFICE USE ONLY
JOB NUMBER
JOB NAME
REF. NUMBER
COST CODE
APPROVED

40. Defendants approved the Dowbuilt Concrete invoice and submitted it to SJH for payment through email on September 12, 2022.

41. But, on September 21, 2022, the project architect refuted Dowbuilt's representations stating that the pay application did not reflect the actual work performed.

On Wed, Sep 21, 2022 at 8:06 AM Tyler Call [redacted]> wrote:

Good morning Michael and Tim,

Yes, that is correct. I was not comfortable certifying the amount in the pay application for Concrete as the percent complete being billed for was no nowhere near reflected in the actual work completed in the field. Tim, I would hope that you see the position you are putting me in is unreasonable… How am I to come to terms with the percent complete that you are billing for versus the work complete in the field?

I do see that both projects continue to move forward in relative ernest as we work through these pay application and lien waiver issues, and that is appreciated, Tim. However, it was my understanding that the recent concrete change order and schedule that were issued came with a statement that said you would pull off work unless they were signed by Michael.

Tim, can we try for a call this afternoon? I will be on the road, but should be able to make something work. When are you free?

42. On September 28, 2022, the architect deemed the amount billed by Dowbuilt Concrete for August 2022 "uncertified due to the concrete work being ~80% paid but <10% complete."

**Attachment A: Architect's Notes on Certification of Payment**

| **Lot 11** | **August / Inv 12** | |
|---|---|---|
| Pay App Submitted (final 9/23/22) | $489,261.35 | |
| | | |
| Less Uncertified Amounts: | | |
| 3D Fire Protection | $10,356.00 | |
| Absolute Foam Insulation | $6,432.80 | |
| Dowbuilt Concrete | $224,491.91 | |
| ET Construction | $8,655.00 | |
| Maldonado Builders | $107,100.00 | |
| Uncertified Amount | $357,035.71 | |
| | | |
| Construction Fee on U/C Amount | $38,381.34 | 10.75% |
| Insurance on U/C Amount | $5,931.26 | 1.50% |
| | | |
| Total Uncertified | $401,348.30 | |
| | | |
| **Certified Amount (9/28/22)** | **$87,913.05** | |

**August Invoice 12 Notes**

* 3D Fire, Absolute Foam, Dowbuilt Concrete, ET Construction, Maldonado Builders are subcontractors with WY statutory lien rights on Owner's property but are missing WY Statutory notarized form of lien release from sub to Owner. Please provide a notarized WY statutory form of lien release.

* Dowbuilt Concrete is uncertified due to the concrete work being ~80% paid but <10% complete.

* SDI LLC Construction Fee and Insurance are partially certified based on adjustments for the uncertified amounts.

43. As another example, on October 20, 2022, Dowbuilt Concrete submitted a pay application to Defendants, which they approved, seeking $47,239.16 for Lot 11 concrete work allegedly completed through October 2022. As in others, this pay application fraudulently stated

86.03% of the work had been completed, when in reality, only about 10% was finished. Atkinson certified, under the penalty of perjury, that the statements in the application were true and correct, just as he had done with previous fraudulent applications.

FROM
Dowbuilt Concrete

AFP # 10 DATE 10/20/2022
PROJECT NAME Lot 11
PROJECT NUMBER 369
PROJECT ADDRESS 1165 W Bar BC Ranch Road
Jackson, WY 83001

FOR WORK COMPLETED THROUGH 10/20/2022

| | | | |
|---|---|---|---|
| ORIGINAL CONTRACT AMOUNT | | $ | 937,844.66 |
| MODIFICATIONS | No. One | $ | 661,033.34 |
| | No. Two | $ | |
| | No. Three | $ | |
| | No. Four | $ | |
| | No. Five | $ | |
| MODIFIED CONTRACT AMOUNT | | $ | 1,598,878.00 |
| TOTAL % OF WORK COMPLETE | | | 86.03 % |
| AMOUNT OF CONTRACT COMPLETE | | $ | 1,375,484.19 |
| LESS PREVIOUS GROSS BILLING | | $ | 1,328,245.03 |
| GROSS AMOUNT OF THIS BILLING | | $ | 47,239.16 |
| LESS RETENTION | | $ | |
| NET AMOUNT OF THIS BILLING | | $ | 47,239.16 |

☐ Yes, please pay by the 10th and take discount. *IMPORTANT: Invoices are paid by the 10th only if Subcontractor offers a 2% discount. Please "X" the box above if you want to be paid by the 10th.

We hereby agree with the above terms and conditions upon which will be the basis of Dowbuilt's payment of this SUBCONTRACT APPLICATION FOR PAYMENT. I CERTIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF WYOMING THAT THE ABOVE IS A TRUE AND CORRECT STATEMENT.

NAME Mark Atkinson
TITLE Manager
SIGNED DocuSigned by: Mark Atkinson 431DCF0B370D4E8...
Dated this 12/9/2022
AT Seattle, WA
(City, State)

FOR OFFICE USE ONLY
JOB NUMBER
JOB NAME
REF. NUMBER
COST CODE
APPROVED

44. Despite claiming that more than 86% of the work was complete, there was no noticeable progress in the concrete work for Lot 11, aside from the south retaining wall. A comparison of security camera images of Lot 11 from September 2 to October 20 shows no observable progress in the concrete work.







45. Defendants not only fraudulently billed SJH for concrete work that was never actually performed, they invoiced SJH tens of thousands of dollars for materials used on other projects, upon information and belief, double-billing other homeowners for the same materials.

46. During an audit, SJH requested substantiation for the amounts charged for the alleged concrete work. In response, Dowbuilt provided SJH with invoices that supposedly

supported the charges. However, upon examination, several of these invoices were for equipment and materials sent to different projects across the country.

47. For instance, Defendants charged SJH thousands of dollars for plywood that was actually shipped to and used on their Aster Lane project in Wilson, Wyoming.

SOLD TO: 10000246365

DOWBUILT INC
4001 AURORA AVE N
SEATTLE WA 98103

TERRITORY:
SHIP TO: 10003902437

ASTER LANE JOB# C398A
[redacted]
WILSON WY 83014

PLEASE REMIT PAYMENT TO:
White Cap, L.P.
P.O. BOX 6040
CYPRESS, CA 90630-0040

| ORDER DATE | ORDER NO. | ORDERED BY | ACCOUNT MANAGER | TAKEN BY |
|---|---|---|---|---|
| 10/18/2022 | 49487974 | MITCHEL TRESSLAR | NUTTALL, MATT C | AYALA, ANTHONY G |

| BRANCH | ACCT JOB NO. | TERMS | SHIP VIA / ROUTING | CUSTOMER JOB NO. |
|---|---|---|---|---|
| 019 | 10003902437 | NET 30 DAYS | DIRECT SHIP | ASTER LANE JOB |

| LINE | PART NUMBER | DESCRIPTION | QTY ORD | UNIT PRICE | QTY BKO | QTY SHP | EXTENDED PRICE | TAX AMT |
|---|---|---|---|---|---|---|---|---|
| 0 | HDRDESC | ************************************************************<br>DELIVERY TAG#: 22263919<br>SHIPPING NOTES: CONTACT MITCHEL<br>253-886-2200<br>REC'D BY: WALTER ALVAREZ<br>************************************************************ | 1 | 0 | 0 | 1 | 0.00 | |
| 1 | SP<br>XACT2FORM-1 | 3/4" PLYWOOD | 45 | 146.000 EA | 0 | 45 | 6,570.00 | 394.20 |
| 2 | SHIPPING | SHIPPING AND HANDLING | 1 | 5,250.0000 EA | 0 | 1 | 5,250.00 | 0.00 |

48. Defendants likewise charged SJH over ten thousand dollars to rent a crane for a project in a completely different state.

WESTERN PACIFIC CRANE & EQUIPMENT

REMIT U.S. FUNDS TO:
Western Pacific Crane & Equipment, LLC
P.O. Box 83033
Chicago, IL 60691-3010

Anchorage, AK P(907) 331-4876 F(907) 339-0128
Arlington, WA P(253) 254-7950 F(253) 926-7868
Bakersfield, CA P(661) 578-5854 F(661) 589-3489
Fontana, CA P(855) 927-2637 F(909) 356-1340
Kapolei, HI P(808) 682-7263 F(808) 682-7262
Portland, OR P(971) 202-4002
Lathrop, CA P(209) 597-3624 F(209) 834-0607
http://www.wpcrane.com

Ship to:
DOWBUILT INC / TAHOE MILL CREEK (JOBSITE)
[redacted]
INCLINE VILLAGE, NV 89451

Invoice to:
DOWBUILT INC
4001 AURORA AVE N
SEATTLE WA 98103-7809

Branch: 01 - WPCE-FONTANA
Date: 12/15/2021 Time: 11:15:00 (O) Page: 1
Account No.: DOWBU001 Phone No.: 925-525-3206 Invoice No.: R01850
Ship Via: Purchase Order: C348
Payment Terms: NET 30 DAYS
Salesperson: 804 / JMV

**RENTAL INVOICE**

Description INVOICE #: R01850 For Contract #: 000272 Amount

Billing #: 5 Covering From 12/15/2021 to 01/11/2022

15

Manitou MRT3255 Charge for usage of 1 MONTH 12500.00
Stock #: N004219 Serial #: 776278
Date Out: 08/25/2021 12:00

Subtotal: 12500.00
NV-WASHOE: 1033.13
DOWBU001 TOTAL DUE: 13533.13

49. Additionally, Defendants purchased and billed SJH tens of thousands of dollars for large quantities of tools, office furniture, and equipment that were supposedly intended for the Projects. But, after Defendants' involvement with the project ceased, only some scaffolding materials remained on site. The rest of the tools and equipment were removed from the project.

50. In a report prepared for SJH following demobilization, one of SJH's representatives for the Projects stated that based on his "observations of the site before, during, and after Contractor's departure, I must assume that the remaining items on the Purchased Tools Inventory list that are not currently on site were removed by Contractor."[4] On information and belief, to effectuate their scheme, Defendants converted and used SJH's tools for other projects, while simultaneously charging other homeowners for the same.

***iv. Defendants Charged SJH for Hours Not Actually Worked by Dowbuilt Employees***

51. Defendants also submitted fraudulent invoices by charging SJH for time for individuals did not actually work. For example, an investigation by SJH revealed that Tod Murdock, an employee of Dowbuilt, who posed as SDI's superintendent for the Projects, billed for days when he was not present at Lot 11.

52. The investigation focused on twenty-six Fridays, for which SJH compared Murdock's timecard entries with security camera footage. The findings showed that Murdock was absent on fifteen of those days. Additionally, for two of the twenty-six days, the amount of time Murdock reported being at Lot 11 did not match the actual time he was present. Taken together, Defendants fraudulently charged for Murdock's time on over 65% of the days investigated. Upon

[4] Letter from The Hole Works, LLC to SJH (Dec. 29, 2022).

information and belief, Murdock and other employees of Dowbuilt engaged in similar fraudulent billing on numerous other occasions.

### *v. Defendants "Double Dip" Indirect and Direct Fees*

53. Defendants compounded their fraud by adding an additional 12% "Contractor" fee and 1.5% insurance fee on top of the fabricated time entries. Thus, by falsely increasing the subtotals, Defendants also falsely increased the indirect fees that were applied as a percentage to the subtotals. Indeed, the architect responded to an email from SJH regarding the fees, stating that, based on a conversation with Heger, he knew that they were "double dipping on insurance."

**Tyler Call** [redacted] Wed, Aug 10, 2022 at 9:34 PM
To: Michael Dearing [redacted]
Cc: Chris Mommsen [redacted]

To answer the second question is that my math is based on the current pay app using (fee + insurance = ~12.4% of total invoice). So if we are not certifying the concrete, that leaves $152,110.76 + 12.4% fee/insurance = $170,972.49.

That said, I know now that they are double dipping on insurance. In other words, they charge 1.5% above the line, and add another small unknown % below the line for admin…this is according to a conversation with Jeff this afternoon who had to call the accounting department to even learn that. I told him that felt a bit odd to do it that way and we would need some better explanation. In the meantime, how about we do this…keep the math per the contract, and the new math is:

$264,226.93 – (fee + insurance) = $235,001.03 – ($82,890.27 concrete) = **$152,110.76 + 10.75% fee + 1.5% insurance = $170,989.61**

### *vi. Defendants Submitted Unjustified Change Orders Based on Threats of Halting Work or Baseless Claims of Price Increases*

54. Defendants further facilitated their scheme by submitting unjustified change orders to SJH and inducing or attempting to induce SJH to approve them. To achieve this, they backed their change orders with threats to halt work or by making baseless claims of price increases.

55. One example of Defendants using threats to coerce SJH into approving change orders involves Dowbuilt Concrete. In August 2022, during a month when Defendants billed SJH hundreds of thousands of dollars for concrete work that could not be certified by the architect (as

noted above), they sought additional change orders. At the time, SJH was hesitant to approve these new requests due to the lack of progress—despite previously approved work orders.

56. To induce SJH to accept their new change orders, Defendants presented them with an ultimatum—sign the orders or they would "pull off work." Indeed, in an email from the architect to SJH and Glick (the same email mentioned in ¶ 41), the architect expressed that it was his understanding that the "concrete change order and schedule . . . came with a statement that [Glick] would pull off work unless they were signed by [SJH]."

> I do see that both projects continue to move forward in relative ernest as we work through these pay application and lien waiver issues, and that is appreciated, Tim. However, it was my understanding that the recent concrete change order and schedule that were issued came with a statement that said you would pull off work unless they were signed by Michael.

57. Defendants also induced SJH to approve change orders based on false claims of price increases.

58. One example involved Pro Flow HVAC. Defendants sought no competitive bids for HVAC work. Instead, they reached out to Pro Flow whose owner, John Haslam, has long-standing ties to Glick and Dowbuilt employees, including Murdock, a close friend. Initially, Haslam quoted the HVAC work at $178,432, an amount that the Defendants subsequently approved.

59. However, before beginning any work or procuring materials for the Projects, Defendants submitted a change order for approval, claiming that the price of HVAC equipment had increased by 18% and the cost of sheet metal had risen by 98%. They argued that these alleged price increases necessitated SJH's approval of a change order to raise the price of the fixed-price contract, along with a request for a 50% deposit in advance.

60. The allege price increases were a sham. Haslam never sought an initial price estimate for HVAC equipment nor provided any documented proof of a price increase. Furthermore, he did not use the deposit to purchase the allegedly higher-priced materials.

61. Regarding the deposit, in an email among Dowbuilt employees, Hank Warneck expressed that he had no problem with it, "as long as we trust them to get the materials ordered," and directly asked Glick for his thoughts.

**From:** Hank Warneck [redacted]
**Sent:** Thursday, January 27, 2022 9:43 AM
**To:** Tyson Abel <[redacted]; Tim Glick [redacted]>
**Cc:** Jeffrey Heger [redacted]>; Tod Murdock [redacted]
**Subject:** RE: MDR 10 & 11 | ProFLow HVAC

I don't see any issue with the deposit request as long as we trust them to get the materials ordered.

@Tim Glick – what do you think?

Thanks,
Hank

62. Glick responded by vouching for Haslam.

Word 4 Word

**From:** Tim Glick
**To:** Hank Warneck; Tyson Abel
**Cc:** Jeffrey Heger; Tod Murdock
**Subject:** RE: MDR 10 & 11 | ProFLow HVAC
**Date:** Thursday, January 27, 2022 9:49:30 AM

Tyson and I just spoke about this......Johnny has always requested this, so it is not new to me and Johnny has always provided the equipment in the past. Jason is also aware of this type of billing from Johnny so we should see no push back from him. Lastly, these are long lead-time items and Michael wants to ensure we are procuring anything we can. I feel we move forward with contracting with Proflow and submit the 50% deposit.

Tim Glick
DOWBUILT
307 413 4476 / MOBILE
206 633 3003 / MAIN
DOWBUILT.COM
This message may contain confidential or proprietary information. If you are not the intended recipient, you may not copy or communicate this message to anyone. If you received this message in error, please destroy this message and notify the sender by reply email. *Dowbuilt is a registered trade name of Dowbuilt Inc., SDI LLC, SDC LLC, and DFPC LLC*

63. By vouching for Haslam, Defendants ultimately induced SJH to approve the change order and pay the substantially increased deposit. After receiving the funds, however, Haslam did not use the money for the Projects as intended. Instead, he redirected it to settle outstanding invoices for other projects, pay workers for different jobs, and cover his personal expenses. He

even paid approximately 10–15% of the deposit to Murdock, an employee of Dowbuilt. Haslam later acknowledged that "the money is [SJH's] and was paid to me for a deposit that I didn't do anything for."[5]

### *vii. Defendants Caused Injury by Withholding Payment from Subcontractors*

64. There are also instances in which Defendants withheld SJH's money intended for a subcontractor's legitimate work, such as with a window subcontractor, View Point.

65. View Point completed work worth hundreds of thousands of dollars on the Projects. Upon receiving monthly pay packages, which included subcontractor invoices, SJH promptly paid Defendants so they could, in turn, pay the subcontractors for work certified by the architect.

66. However, after collecting the money and making signed representations that prior payments to View Point had been released, Defendants withheld View Point's payment without SJH's knowledge. While SJH was trying to dry-in the Projects before winter set in, SJH discovered that View Point stopped its work and refused to return due to non-payment. It later became clear to both SJH and View Point that Defendants had simply refused to release the payment as part of their scheme to defraud. SJH was ultimately forced to take expensive protective measures to ensure the windows and structures were insulated from the winter weather.

### *viii. Defendants' Ongoing Scheme Harms SJH and Other Homeowners*

67. Other suspecting homeowners are also victims of Defendants' scheme. Upon information and belief, Defendants employed the same tactics in furtherance of its scheme to defraud and caused the same harm to other homeowners in various projects across the country.

68. Upon information and belief, Defendants are running their same scheme using E.T. Construction on a project on Aster Lane, among others.

---

[5] Email from John Haslam to SJH (July 24, 2023).

J Jef <7742178012> 10/6/2022, 9:28
Meet me at Aster lane this morning. I am waiting for Tim to coordinate a trailer for lot 10 with fish creek.

U Unknown 10/6/2022, 9:39
👍

69. Defendants' actions have thereby caused SJH and other victims injury in their business and property.

70. There is a threat that Defendants' scheme to defraud will continue to generate a pattern of racketeering activity for the foreseeable future.

71. For this reason, and despite the great lengths Defendants underwent to pull the wool over SJH's eyes, Defendants' playbook has been exposed, and SJH now brings its claims.

**<u>FIRST CAUSE OF ACTION</u>**
**Violation of 18 U.S.C. §§ 1962(c)**
**(asserted against Dowbuilt and Glick)**

72. SJH hereby realleges and incorporates all previous allegations.

73. 18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

74. SJH is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

75. Dowbuilt and Glick are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

76. Defendants directed the affairs of an association-in-fact "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) consisting of shell entities and individuals including but are not limited to: SDI, Dowbuilt Concrete, Mitchel Tresslar, Dynamic Development LLC, Emilio Tzompa, Luis Tzompa, E.T. Construction, John Haslam, Pro Flow HVAC, Tod Murdock, Hank Warneck, Jeff Heger, and Mark Atkinson (the "Contractor Shell Enterprise").

77. The Contractor Shell Enterprise is managed and directed by Dowbuilt and Glick, who financed, developed, and implemented a scheme to defraud, and the commission of numerous RICO predicate acts as set forth herein (the "RICO Fraud Scheme").

78. As part of the RICO Fraud Scheme, and under the veil of the legitimate Contractor Shell Enterprise businesses, Defendants solicited agents and others to assist in the fraudulent transactions and to fulfill necessary roles in the implementation of the RICO Fraud Scheme.

79. The common purpose of the RICO Defendants and their agents as members of the Contractor Shell Enterprise was to fraudulently induce residential construction clients to approve and pay false and/or inflated invoices for residential construction work or supplies and to make money and profit therefrom. Defendants have been engaged in racketeering and other activities affecting interstate commerce since at least 2021.

80. Defendants' representations, including their invoices and communications regarding the same, were false and made in furtherance of the RICO Fraud Scheme, and Defendants violated 18 U.S.C. § 1961(1) by engaging in a pattern of "racketeering activity" including the predicate acts of mail fraud and wire fraud.

81. In violation of 18 U.S.C. § 1962(c), Defendants conducted and/or participated in the conduct of the Contractor Shell Enterprise's affairs, directly or indirectly, through a pattern of racketeering activity.

82. Defendants engaged in a scheme or artifice to defraud and participated in the operation or management of the Contractor Shell Enterprise by making false representations to get paid, submitting multiple falsified invoices to fraudulently induce payments from SJH and other victims for amounts not actually owed, obstructing SJH's audit, and concealing their misconduct.

83. Defendants' pattern of racketeering used the same scheme, enterprise, participants, and false billing practices to induce SJH to pay millions of dollars for labor Defendants and the Contractor Shell Enterprise did not perform and for materials not used on the Projects. Moreover, upon information and belief, Defendants employed the same tactics in furtherance of its scheme to defraud and caused the same harm to at least five other homeowners in various projects across the country, including victims in Jackson and Wilson, Wyoming; Incline Village, Nevada; Malibu, California; and Stowe, Vermont. Defendants' actions have thereby caused SJH and other victims injury in their business and property.

84. There is a threat that Defendants' scheme to defraud will continue to generate a pattern of racketeering activity for the foreseeable future.

85. The pattern of racketeering activity consisted of Defendants committing, or directing others to commit, numerous acts of mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 by causing numerous documents to be placed in any post office or authorized depository and/or by transmitting documents by means of wire communication in interstate commerce, including but not limited to:

a. On December 31, 2021, in furtherance of the scheme to defraud, Glick sent E.T. Construction via mail a check (no. 1360) for $13,600. This amount included overpayments for hours that SJH discovered through its investigation were not actually worked by E.T. Construction, which SJH was fraudulently induced to pay.

b. On February 3, 2022, in furtherance of the scheme to defraud, Glick sent E.T. Construction via mail a check (no. 1386) for $13,600. This amount included overpayments for hours that SJH discovered through its investigation were not

actually worked by E.T. Construction which SJH was fraudulently induced to pay.

c. On March 2, 2022, in furtherance of the scheme to defraud, Glick sent E.T. Construction via mail a check (no. 1409) for $14,760. This amount included overpayments for hours not worked by E.T. Construction, which SJH was fraudulently induced to pay.

d. On April 8, 2022, in furtherance of the scheme to defraud, Glick sent E.T. Construction via mail a check for $12,800. This amount included overpayments for hours not worked by E.T. Construction, which SJH was fraudulently induced to pay.

e. On April 11, 2022, in furtherance of the scheme to defraud, Defendants emailed SJH the March monthly billing package for Lot 10, which included fraudulently inflated rates, hours, and indirect fees. *See supra* ¶ 24.

f. On April 15, 2022, in furtherance of the scheme to defraud, Defendants emailed SJH the March monthly billing package for Lot 11, which included fraudulently inflated rates, hours, and indirect fees. *See supra* ¶ 24.

g. On May 3, 2022, in furtherance of the scheme to defraud, Glick sent E.T. Construction via mail a check for $18,160. This amount included overpayments for hours not worked by E.T. Construction, which SJH was fraudulently induced to pay.

h. On May 10, 2022, in furtherance of the scheme to defraud, Defendants emailed SJH the April monthly billing packages, which included fraudulently inflated rates, hours, and indirect fees. *See supra* ¶ 24.

i. On May 18, 2022, in furtherance of the scheme to defraud, Dowbuilt and Terrie Anderson, Dowbuilt's CFO, sent Dynamic via mail a check (no. 22535) for $25,935. This amount was deposited into Dynamic's Bank of Jackson Hole account ending in 4190. This amount included overpayments for hours not worked by Dynamic, which SJH was fraudulently induced to pay.

j. On June 10, 2022, in furtherance of the scheme to defraud, Glick sent E.T. Construction via mail a check (no. 1461) for $16,200. This amount included overpayments for hours not worked by E.T. Construction, which SJH was fraudulently induced to pay.

k. On July 8, 2022, in furtherance of the scheme to defraud, Defendants emailed SJH the March monthly billing package for Lot 10, which included fraudulently inflated rates, hours, and indirect fees. *See supra* ¶ 24.

l. On July 13, 2022, in furtherance of the scheme to defraud, Defendants emailed SJH the March monthly billing package for Lot 11, which included fraudulently inflated rates, hours, and indirect fees. *See supra* ¶ 24.

m. On July 15, 2022, in furtherance of the scheme to defraud, Dowbuilt and Terrie Anderson mailed Pro Flow via mail a check (no. 25072) for $105,746. This amount was deposited into Pro Flow's Mountain America account ending in 4907. Defendants fraudulently induced SJH to pay this amount for a deposit premised on unsupported price increases. Moreover, despite Defendants' assurance otherwise, the deposit was not used for the Projects. Instead, it was used for purposes outside the Projects' scope, including by paying Murdock approximately 10–15% of the deposit.

n. On July 15, 2022, in furtherance of the scheme to defraud, Dowbuilt and Terrie Anderson mailed Dynamic a check (no. 25066) for $56,690. This amount was deposited into Dynamic's Bank of Jackson Hole account ending in 4190. This amount included overpayments for hours not worked by Dynamic Development, as set forth above, which SJH was fraudulently induced to pay.

o. On July 22, 2022, in furtherance of the scheme to defraud, Defendants sent SJH via email an hour log and executed pay application for Dynamic's purported work on Lot 11. As explained above, this contained numerous fraudulent representations about "Jade's" work, which was nonexistent. *See supra* ¶¶ 27–29. It also contained several misrepresentations regarding Emilio's and Luis's work billed for specific days as set forth above. *See, e.g.*, *supra* ¶ 30. Glick also certified the accuracy of the pay statements under penalty of perjury.

p. On, July 23, 2022, in furtherance of the scheme to defraud, Defendants emailed SJH an hour log and executed pay application for Dynamic's purported work on Lot 10. As explained above, it contained numerous fraudulent representations about "Jade's" work, which was nonexistent. *See, e.g.*, *supra* ¶¶ 27–29. It also contained several misrepresentations regarding Emilio's and Luis's work billed for specific days as set forth above. *See, e.g.*, *supra* ¶ 30. Glick also certified the accuracy of the pay statements under penalty of perjury.

q. On September 12, 2022, in furtherance of the scheme to defraud, Defendants approved a Dowbuilt Concrete invoice that fraudulently reported the total percentage of work completed and submitted the same to SJH for payment through email.

r. On September 22, 2022, in furtherance of the scheme to defraud, Dowbuilt through Dowbuilt Concrete submitted a pay application via wire to Defendants for Lot 11 concrete work allegedly completed. The pay application fraudulently reported that the total percentage of work complete was at 76.84%, when it was actually less than 10% completed. One of Dowbuilt's employees (knowingly or recklessly) falsely certified, under the penalty of perjury, that the statements in the application were true and correct.

s. On October 3, 2022, in furtherance of the scheme to defraud, Dowbuilt employee Tod Murdock instructed Emilio Tzompa to "take off" October 4. Despite agreeing to take the day off, Tzompa submitted an invoice which billed a full 10-hour day for October 4, which Defendants approved and submitted to SJH.

t. On October 5, 2022, in furtherance of the scheme to defraud, Dowbuilt employee, Jeff Heger, texted Emilio Tzompa instructing him to work only a "few hours" on October 6 on the Projects but reassured him he could log a full day. As instructed, Tzompa billed a full 10-hour day on October 6 despite not working those hours.

u. On or around October 20, 2020, in furtherance of the scheme to defraud, Dowbuilt through Dowbuilt Concrete submitted a pay application via wire to Defendants for Lot 11 concrete work allegedly completed. The pay application fraudulently reported that the total percentage of work complete was at 86.03%, when only around 10% was actually completed. One of Dowbuilt's employees

(knowingly or recklessly) falsely certified, under the penalty of perjury, that the statements in the application were true and correct.

86. SJH relied on Defendants' misrepresentations—including the various mail and wire transmissions described above—by, among other things, paying millions of dollars to Defendants.

87. SJH was directly injured and suffered damages to its business and property because of Defendants' acts of mail and wire fraud. On information and belief, other victims were also directly injured and suffered damages to their business and property because of Defendants' scheme to defraud. Defendants' scheme is expected to persist against additional unsuspecting homeowners.

88. By virtue of these violations of 18 U.S.C. § 1962(c), and under 18 U.S.C. § 1964(c), Defendants are liable to SJH for actual damages, treble damages, the cost of this suit, and attorneys' fees in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**Violation of 18 U.S.C. § 1962(d)**
**(asserted against Dowbuilt and Glick)**

89. SJH hereby realleges and incorporates all previous allegations.

90. 18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

91. Defendants agreed and conspired with the members of the Contractor Shell Enterprise to participate in, or to facilitate the commission of, predicate acts as stated above and agreed and conspired to facilitate the acts leading to the substantive offense of conducting the affairs of the Contractor Shell Enterprise through a pattern of racketeering activity, which included the repeated acts as alleged above, in violation of 18 U.S.C. § 1962(d).

92. The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the section 1962(c) Contractor Shell Enterprise described previously through a pattern of racketeering activity.

93. As demonstrated in detail above, Defendants and members of the Contractor Shell Enterprise have engaged in numerous overt and predicate racketeering acts in furtherance of the conspiracy in furtherance of the scheme to defraud.

94. The nature of the above-described RICO scheme indicates that the members of the Contractor Shell Enterprise not only agreed to the objective of a RICO conspiracy under 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c), but also that they were aware that their ongoing fraud has been and is part of an overall pattern of racketeering activity.

95. As a direct and proximate cause of Defendants' conspiracy to participate in the conduct of the affairs of the Contractor Shell Enterprise alleged herein, SJH and other victims have been and continue to be injured in their business and property as set forth above.

**THIRD CAUSE OF ACTION**
**Fraud**
**(asserted against all Defendants)**

96. SJH hereby realleges and incorporates all previous allegations.

97. As noted above, Defendants committed fraud on the Projects by, among other things, engaging in the following activities:

a. Submitting false invoices and collecting payment for such invoices for services on the Projects, which were either improperly marked up or for work that was not done;

b. Submitting the false invoices with falsified supporting statements, including signed certifications attesting to the accuracy and truthfulness of the invoices; and

c. Submitting false financial records for the Projects to cover up their activities during SJH's investigations into these matters.

98. For example, on April 15, 2022, Defendants sent a bill to SJH for $284,559.11 for the work allegedly completed on Lot 11 in March 2022. Glick certified that "to the best of [his] knowledge, information and belief the work covered" in the bill was completed and that payment was due. But, as previously explained, the underlying bill contained numerous knowingly fraudulent representations about the work performed by subcontractors. This included 569 hours Jade Tzompa purportedly worked for Dynamic/E.T. Construction, billed at a rate of $60, totaling $34,140.

99. SJH detrimentally relied on these misstatements and paid the bill, believing that Defendants' representations that the hours worked were true. Defendants, and on information and belief, other Dowbuilt employees, knew the representations were false.

100. And, as noted above, this fraud was repeated in numerous instances. *See, e.g.*, *supra* ¶¶ 24, 39. For example, Defendants sent several similar fraudulent invoices to SJH, including on the following dates in 2022: March 11, April 15, and May 9. SJH relied on Defendants' false representations, misrepresentations, and omissions, leading them to pay these invoices on March 15, 2022, April 19, 2022, and May 9, 2022. These actions constitute representations of fact that were false and that Defendants knew were false, or were made recklessly, and that were material to the Projects.

101. SJH materially and reasonably relied on Defendants' false representations, misrepresentations, and omissions to SJH's detriment, paying millions to Defendants as a result.

102. As a direct and proximate result of these actions, SJH has suffered damages and is entitled to compensatory relief in such amount as proven at trial to put SJH in the same position as it would have occupied had Defendants' fraud not occurred.

103. Defendants' conduct as alleged above was done in furtherance of their own private interests, was grossly negligent, willful, malicious, reckless, and wanton, and done with specific intent to harm SJH and/or disregard for SJH's rights.

104. Accordingly, SJH is entitled to an award of punitive damages from Defendants in an amount to be proven at trial and sufficient to punish, penalize, and deter Defendants from engaging in such conduct in the future.

**FOURTH CAUSE OF ACTION**
**Negligent Misrepresentation**
**(asserted against all Defendants)**

105. SJH hereby realleges and incorporates all previous allegations.

106. To the extent the trier of fact finds any specific statement by Defendants not to be fraudulent, Defendants made false or grossly negligent untrue statements about important facts related to the Projects, as detailed above.

107. Although SJH was not aware until after the fact, Defendants had a pecuniary interest in the Projects.

108. Defendants knew or should have known that these statements were false. If Defendants did not know these statements were false, this was a result of Defendants' negligence and failure to exercise reasonable care and competence in verifying the invoices at issue.

109. Defendants intended that SJH would act on their false statements by paying, approving bills for payment, and refraining from investigating or objecting to bills.

110. SJH reasonably believed the statements and justifiably relied upon them, and therefore, Defendants are liable for SJH's pecuniary loss caused by Defendants' actions.

111. As a direct and proximate result of these actions, SJH has suffered damages and is entitled to compensatory relief in such amount as proven at trial to put SJH in the same position as it would have occupied had Defendants' negligent misrepresentations not occurred.

**<u>FIFTH CAUSE OF ACTION</u>**
**Conversion**
**(asserted against all Defendants)**

112. SJH hereby realleges and incorporates all previous allegations.

113. SJH owned legal title to property, namely, equipment, materials, and tools related to the Projects, that it had a right to possess when the conversion occurred.

114. Defendants wrongfully gained dominion over said property of SJH in a manner that denied SJH its rights to use and enjoy said property.

115. SJH has suffered damages as a direct and proximate result of Defendants' conversion of said property in an amount to be proven at trial.

**<u>SIXTH CAUSE OF ACTION</u>**
**Unjust Enrichment**
**(asserted against all Defendants)**

116. SJH hereby realleges and incorporates all previous allegations.

117. Valuable goods or benefits, namely money, were rendered by SJH to Defendants.

118. Said money was accepted, used, and enjoyed by Defendants.

119. Under such circumstances, as set forth in this Amended Complaint, Defendants were reasonably notified that SJH expected Defendants to make restitution of benefits wrongfully obtained by Defendants.

120. Defendants should not be permitted unjustly to enrich themselves at the expense of SJH but should be required to make restitution of or for property or benefits received, retained, or appropriated.

121. SJH has suffered damages as a direct and proximate result of Defendants' unjust enrichment in an amount to be proven at trial.

**JURY DEMAND**

122. Under Federal Rule of Civil Procedure 38(b), SJH hereby demands a trial by a jury of twelve of all issues so triable that are raised herein, or which hereinafter may be raised, in this action.

**PRAYER FOR RELIEF**

Wherefore, SJH respectfully prays for judgment and relief against Defendants as follows:

A. Compensatory, direct, actual, and/or punitive damages in the amount to be proved at trial.

B. All legal, equitable, consequential, and/or incidental damages as determined by the trier of fact, including treble damages;

C. Attorneys' fees, costs of court, and out-of-pocket expenses;

D. Pre- and post-judgment interest at the highest rate(s) allowed by law; and

E. Any such other further relief as the Court may deem just and proper.

Dated: August 31, 2026

DEFAZIO LAW OFFICE, LLC

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*/s/ Sarah Tollison*
Sarah Tollison (WSB# 6-4371)
DEFAZIO LAW OFFICE, LLC
172 Center St, Suite 203
Jackson, WY 83001
Telephone: (307) 733-5965
Facsimile: (307) 733-3786
sarah@defaziolaw.com

Rajat Rana (pro hac vice)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 5th Ave, 9th Floor
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
rajatrana@quinnemanuel.com

Stephen Q. Wood (pro hac vice)
Sterling M. Paulson (pro hac vice)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
2755 E Cottonwood Pkwy, Suite 520
Salt Lake City, UT 84121
Telephone: (801) 515-7300
Facsimile: (801) 515-7400
stephenwood@quinnemanuel.com
sterlingpaulson@quinnemanuel.com

*Attorneys for Plaintiff SJH 11 LLC*